CRAWFORD *et al. v.* BANK OF SEMINARY, FOR USE OF WIL-
LIAMS.

(Division A.   Feb. 22, 1937.)

[172 So. 750.   No. 32603.]

**George Gandy** and **E. L. Dent**, both of Collins, for appellants.

**Welch & Cooper,** of Laurel, for appellee.

Argued orally by **George Gandy,** for appellant.

**McGowen, J.,** delivered the opinion of the court.

The record in this case shows that the Bank of Seminary recovered a judgment in the county court of the Second Judicial District of Jones county against B. T. Williams, S. B. Williams, and G. N. Corley for $175.67, with 8 per cent. interest per annum from that date. On October 18, 1929, B. T. Williams paid this judgment in full. Prior to October 1, 1935, B. T. Williams made an affidavit in compliance with section 2961, Code 1930, that he was a surety for Corley on the original debt for which judgment was rendered against him, and that he paid judgment in full.

On October 1, 1935, B. T. Williams procured from the clerk of that court a writ of execution against Corley on this judgment, wherein the Bank of Seminary was named a judgment creditor, returnable to the county court of Jones county—not specifying which judicial district—at a term of that court to be held on the second Monday of December, 1935. There was no indorsement thereon that Williams, the surety, had paid the judgment. The execution was directed to the sheriff of Covington county. On the same day and about the same time, the clerk, upon the written suggestion of Williams, issued a writ of garnishment, directed to the same sheriff, commanding him to summon as garnishee J. O. Thames, Corley's debtor, to the same term of court as was the execution returnable. The clerk made a copy of the writ of garnishment, both of which were for some reason dated September 30, 1935.

Williams placed the execution, the writ of garnishment, and a copy thereof in an envelope in the clerk's office at Laurel, and from thence proceeded to Collins, in Covington county, to the office of E. H. Crawford, the sheriff of that county.

Under section 3317, Code 1930, after the return day of the execution, Williams filed a motion against the

sheriff in that county court, alleging that the sheriff had failed to return the execution at any time, and demanded judgment against the sheriff, and the surety on his bond, for the amount of the original judgment and costs therein, with 8 per cent. interest. The sheriff and his surety appeared and answered the motion, which answer, in effect, denied that the execution had ever been in his hands.

On the hearing of the evidence, the county court entered a judgment against the sheriff and his surety as demanded in the motion. From that judgment, Crawford and his surety appealed to the circuit court, where the case was affirmed; and from that judgment the sheriff and his surety appeal here.

According to the evidence of Williams, he, on October 1, 1935, went to the sheriff's office at Collins, and there said to Crawford, "Here's some papers I want you to execute," taking the three papers placed in the envelope and handing them to the sheriff, who, upon looking at them, said, "He hasn't a damn thing." Williams said, "Are you sure." The sheriff and Williams evidently became angry and had an argument. Williams wanted a "showing" in writing that Corley did not have anything. Crawford told his office deputy, a girl, to look up Corley, and she stated that he had a poll and road tax. The sheriff told Williams, who wanted a truck and some cotton on the property of Corley seized, levied upon, or attached. The sheriff replied that he could not attach the property without a bond, saying, "If you will give a bond, I will go down and attach every damn thing you could put your hands on." "He, the sheriff, gave me back the papers in the envelope." Thereupon Williams left, but upon finding that one paper was missing he returned and asked the sheriff if he had left one of the papers, to which question the sheriff responded. "Yes." Williams requested the sheriff to give him that

paper if he was not going to execute it. The sheriff replied, "I have sent it down already." Williams then said, "Hadn't you better take these other papers," to which the sheriff replied, "No, we will wait and see what he does." The paper retained by the sheriff was the writ of garnishment, which he duly served and promptly returned to the proper court. Williams left with the execution, and the sheriff never thereafter saw the papers until the motion was filed against him; nor was any further demand made on him to levy the execution.

The sheriff said, in effect, that the paper he had and saw was the garnishment writ, and that he had never had, or had never seen the writ of execution. He was corroborated more or less by several other parties in his office at the time of the above colloquy.

In deciding this case under the familiar rule, we leave out of view the evidence of the sheriff and his witnesses.

We are of opinion that the execution creditor here so acted as to relieve the sheriff from the penalty imposed by section 3317, Code 1930, by permitting the sheriff to hand the writ of execution back to him and then taking it, of his own volition, entirely under his own dominion and control and never thereafter delivering or sending to the sheriff the process. The sheriff's action might be conceded to be a waiver of tender, but no such question is involved here. Williams, by his own voluntary act, accepted the execution from the sheriff and took it away. Notwithstanding the officer had said he would not execute it without a bond, if Williams desired to enforce this statute to come within its highly penal and harsh terms, he should have stood upon his rights then and there and left the papers with the sheriff. Whether it was a misconception of law or fact on the part of both actors makes no difference. Williams directly and positively by his own act withdrew from the sheriff, at the latter's instance, all control of the process and deprived

the sheriff of a chance to correct an error which had the officer been left with control thereof might or might not have resulted in a default on his part.

As said in Simms v. Quinn, 58 Miss. 221: "Those who propose to invoke against public officers the severe penalties of the statute upon which this motion is based, must be very careful to do nothing which directly or indirectly contributes to the omission of duty complained of." See, also, Cox v. Ross, 56 Miss. 481; Skinner v. Wilson, 61 Miss. 90; Watson v. Boyett, 151 Miss. 726, 118 So. 629, 631. In the case last named, the court said, "Very slight circumstances are held to exempt officers from their operation."

The court below should have dismissed the motion. Reversed and judgment here for appellant.