### W. T. RAWLEIGH Co. v. BRANTLEY et al.

(In Banc. Nov. 13, 1944. Suggestion of Error Overruled Dec. 22, 1944.)

[19 So. (2d) 808. No. 35677.]

R. W. Boydstun, of Louisville, for appellant.

**W. H. Sanford,** of Philadelphia, for appellees.

Argued orally by **R. W. Boydstun**, for appellant.

**McGehee, J.,** delivered the opinion of the court.

This is a proceeding whereby the appellant, The W. T. Rawleigh Company, seeks to recover by motion against the appellees, Will D. Brantley, as sheriff of Neshoba County; and the surety on his official bond, the penal sum of Five Hundred Dollars provided for under Section 4245, Code of 1942. The complaint is that the said officer made a false return on certain writs of execution issued on an enrolled judgment in the sum of $1,-232.47, including interest and costs, held by appellant against J. J. Barrett, F. S. Pugh and J. H. Beall, and which writs were placed in the hands of such officer on February 25 and July 30, 1943, respectively, and made returnable to the next term of the circuit court of said county to be held in September of that year.

The above mentioned statute reads as follows:

"If a sheriff or his deputy, coroner, or other officer, make a false return on any process whatever, he shall, for every such offense, be liable to pay the sum of five hundred dollars to the plaintiff in the process, recoverable against the officer and his sureties, or the officer alone, by motion before the court to which the process is returnable, after five days' notice of such motion to

the officer and his sureties. If the returns alleged to be false do not appear on the face of the record to be so, the court shall, at the request of either party, impanel a jury to ascertain whether the return be false or not, on an issue joined under the direction of the court; and if the jury find that the return is false, judgment shall be entered for the said sum against the officer and his sureties, with costs.''

Each of the executions commanded the sheriff that ''of the real and personal estate of F. S. Pugh, J. H. Beall and J. J. Barrett, you cause to be made'' the amount of the said judgment, interest and cost.

On August 12, 1943, the sheriff wrote to the attorney of the judgment creditor the following letter:

''After close consideration of the above case I have come to the conclusion that I am in doubt as to all the property in the name of defendants belonging to them, and under the circumstances I will not make the levy unless you furnish me an indemnifying bond to protect me against damage or suit by the above parties, if I should make the levy. Mr. Pugh claims the exemption of an homestead and the other property is under mortgage to the Federal Land Bank. There has not been an appraisal of the property and I do not know what the value is.

''As to his personal property, Mr. Pugh does not claim anything above the exemption. Your execution does not set out any special kind of property.

''Hoping to hear from you at an early date, I beg to remain,

''Your friend,

''Will D. Brantley.''

On the next day the said attorney replied, in substance, that he had received the sheriff's said letter and that he was taking the matter up with his client for further advice, and also stating that ''your acts, or failure to act, in this matter are to me personally satisfactory,'' but that he would communicate with the sheriff

further after receipt of additional advice from his client. Thereupon the sheriff endorsed his return on the writ of execution which was issued on July 30, 1943, in the following language:

"I, Will D. Brantley, sheriff and tax collector of the above State and County, have this day served the within named execution on the within named J. J. Barrett, F. S. Pugh, and J. H. Beall personally and further serving by a diligent search and inquiry to find something upon which I could levy to satisfy said judgment, but after diligent search and inquiry I have failed to find anything in my county upon which I could levy.

"This the 13th day of August, 1943,

"Will D. Brantley,

"Sheriff and Tax Collector."

Thereafter, on August 19, 1943, the attorney for the judgment creditor replied further to the sheriff's letter of August 12th and set forth his views as to the sheriff's want of authority to demand an indemnifying bond before making a levy upon real estate, and further stated that "as for levy upon the personal property we declined to execute an indemnifying bond . . . ," on the ground that he did not think that he could show that "Mr. Pugh owns this personal property." And the record fails to disclose what personal property the other two judgment debtors may have had.

The motion against the sheriff on his official bond avers the return of the said officer to be a "false return," and that the falsity thereof consists in this: "The defendants named in the execution, or some of them, own and have in their possession in Neshoba County, Mississippi, substantial amounts of real estate and personal property upon which levy could have been made at the time of the making of the aforementioned return . . . ."

The sheriff testified that he knew that the judgment debtor F. S. Pugh owned approximately 225 acres of land. It is also shown by letter of the attorney of the

judgment creditor written on August 19th, 1943, as aforesaid, that both he and his client knew this fact, it being stated in said letter as follows:

"We advised our client that the 227 acres of land owned by Mr. Pugh is valued at $10,000 and that they would be safe in paying to Mr. Pugh his $3,000 exemption and taking the place."

Other than this statement of the attorney in that letter there is no suggestion or statement in the record as to the value of said land. It was assessed for taxation at approximately $1,500, and it was shown that a lien was held thereon to secure a loan of $1,500 in favor of the Federal Land Bank of New Orleans, but on which several annual payments had been made. This land was, of course, subject to execution to the extent that it exceeded 160 acres in quantity or $3,000 in value. But Section 323, Code of 1942, provides that if the land on which a person claiming the exemption resides shall exceed this quantity or value, and a proper selection of a homestead has not been made, the officer holding an execution against such person, "and not finding other property to satisfy the same, shall levy the execution on the whole land, . . . "

The proof fails to disclose that there was not sufficient personal property belonging to the defendants, or some of them, to satisfy the judgment if the indemnifying bond requested by the sheriff had been given as provided for by Section 316, Code 1942.

But conceding for the purpose of this decision that the judgment creditor had the right to forego the execution of such a bond and having a levy made upon any personal property belonging to either of the defendants, and to demand of the sheriff instead that he levy upon the land of Mr. Pugh, as suggested by the attorney in his letter to the said officer of August 19, 1943, the fact remains that on September 9, 1943, at the time when the sheriff copied the same return on the writ of execution issued on February 25, 1943, which he had made on

the one issued on July 30, 1943, except as to the date of such later return, both the judgment creditor and its attorney were fully advised, as hereinbefore shown, as to the quantity of land owned by Mr. Pugh and the encumbrance thereon.

Therefore, there is presented in this case for decision two questions, first, whether or not the return of the sheriff hereinbefore quoted, when considered as a whole, amounted to a statement that the defendants owned no property, either real or personal, or was merely an expression of an opinion on the part of the officer that he had failed to find anything upon which he could levy to satisfy the judgment in view of the exemptions allowed by the law and the existing encumbrance on Mr. Pugh's land, and of which facts he advised the attorney on the day before making his first return; second, whether or not under the facts and circumstances heretofore mentioned, the return of the officer was a "false return" within the meaning of said Section 4245, Code 1942, on which this suit is predicated.

We are of the opinion that in view of the information furnished the attorney for the judgment creditor on the day before the first return was made, the said return was clearly understood not to be a representation that neither one nor all of the defendants owned no property at all. Nor do we think it clear that on the face of the return itself, when all the statements contained therein are considered together, there appears to be a false return in the sense that the officer meant to say that none of the defendants had any property, real or personal.

Keeping in mind that the statute here invoked is highly penal, we are of the further opinion that the second question presented for decision must likewise be answered in the negative. We think that what was said by this court in construing Section 4242, Code of 1942, which makes a sheriff liable for the full amount of the execution and costs for failing to return any execution on the return day thereof, is likewise applicable to the

meaning of the statute here under consideration, when the court said that very slight circumstances are held to exempt officers from its operation, and that one seeking to recover thereunder must bring his case clearly within its terms. Watson v. Boyett, 151 Miss. 726, 118 So. 629; Crawford v. Bank of Seminary, 178 Miss. 129, 172 So. 750; W. T. Rawleigh Co. v. Hester, 190 Miss. 329, 200 So. 250; W. T. Rawleigh Co. v. Foxworth, 194 Miss. 205, 11 So. (2d) 919.

The making of a "false return" should be deemed to be that conduct on the part of the officer which stigmatizes his representation of fact as a dishonest one, and as being calculated to deceive another by a suppression of the truth; that is to say, a nondisclosure of some material fact that should be revealed. It is stated in 23 Am. Jur., Sec. 3, p. 756, that: " 'False' may mean untrue, or it may mean designedly untrue, implying an intention to deceive, . . .." We are of the opinion that the return should be designedly untrue, implying an intention to deceive, in order for the penalty herein sued for to be recoverable.

In State ex rel. McLain v. Jenkins et al., 170 Mo. 16, 70 S. W. 152, 154, it is said: "There is an obvious distinction in law, as well as in morals, between a false statement and a failure to state all the facts." In the case at bar, as in that case, the sheriff would have been entitled to have amended his return during the same term of court at which this motion was filed, in accordance with what both the sheriff and the attorney for the judgment creditor must have necessarily understood to be the meaning of the returns actually made. "Generally, the representations (when false or fraudulent) must have been deliberately made, with a consciousness on the part of the person making them that they would be confided in by the person to whom they were made." 23 Am. Jur., Sec. 22, p. 775.

A different question might be presented if this was a motion under Section 4241, Code 1942, for the failure of

the sheriff to levy the execution in response to the request made by the attorney in his letter to the sheriff on August 19, 1943, instead of a motion to collect the penalty for a false return. In such case the statute provides for the imposition of a fine by the court and an action in favor of the injured party for all damages sustained by the failure to execute the process, but as to which amount of damages so paid the sheriff may be subrogated to the rights of the movant. Wilkinson v. Hutto, 157 Miss. 358, 128 So. 93.

While not controlling on the question here presented, it should be noted that in the instant case the status of the lien of the appellant's enrolled judgment remains unchanged as to the 225 acres of land, and the recovery sought herein against the sheriff is strictly a penalty allowable in a proper case in addition to the right to later collect the judgment, and no provision is made as to subrogation in regard thereto. Hence when the return complained of is not false in the sense that it is an artifice employed to suppress the truth for the purpose of deception, the penalty should not be inflicted.

A jury to try the issue of fact thus presented having been waived, the trial judge held the return not to be false within the meaning of the statute here invoked, and we are of the opinion that his action in overruling the motion and dismissing the proceeding should be affirmed.

Affirmed.

DISSENTING OPINION.

**Griffith, J.,** delivered a dissenting opinion.

The salient facts are simple and are undisputed. The sheriff admits that, at the time he made his last return, and this on the original process, he knew of the 227 acres of land owned by one of the execution debtors; and it is admitted that before the final return the execution creditor had specifically pointed out the particular land to

the sheriff. He had actually found the land, knew of it, and yet he returned that after diligent search and inquiry he could not find any property upon which to levy. He admits that he knew of the particular property and yet returns that he couldn't find any property; he admits that he did find it and returns that he didn't find it; he made an untrue statement in his return and yet the controlling opinion says he made no false statement therein, and places the holding on the ground that the falsity did not deceive the execution creditor.

It is not the purpose of the statute in question to furnish information to the execution creditor. The fact is that more often than otherwise the execution creditor furnishes the sheriff with the information as to where and what the property is upon which the levy may be made. As stated, that is what happened here. If the holding of the controlling opinion is maintainable, an execution creditor loses his right under the statute if instead of being asleep he is diligent and aids the sheriff by pointing out property to the officer.

But the mischief of the holding goes further and amounts to this: When a sheriff makes up his mind to make a return that he can't find any property when in fact he can find and has found it, all he will have to do to evade and nullify the statute is to inform the execution creditor that he has found it and what it is and then in defense to his false return show that he has not deceived or misled the execution creditor; and this would be to convict the legislature of the idleness of having enacted a statute for the enforcement of official duty when by the same statute it is permitted that the officers upon whom it is to operate may nullify it at their option by their own devices so simple as this.

The purpose of the statute is to further prompt and effective action on writs and to that end to deter a sheriff from (a) making a return that he has levied the execution when in fact he has not done so, or from (b) making a return that he has been unable to find property

when in fact he has found it, or from (c) making a return that he has made diligent search and inquiry when he has not done so. If this is not the purpose of the statute it had as well never been enacted, and under the ruling of the controlling opinion herein it really had as well never been enacted.

Bouvier, quoting McLain v. Jenkins, 170 Mo. 16, 24, 70 S. W. 152, 154, being the same case cited in the controlling opinion, defines a false return as "a return made by the sheriff or other ministerial officer to a writ, in which is stated a fact contrary to the truth, and injurious to one of the parties, or to some one having an interest in it." Certainly, it would not be contended that the execution creditor was not legally injured by the false return which postponed him.

There is not involved here a definition of fraud and deceit or a statement by one private person to another or by a private person to an officer, from which the controlling opinion draws its argument about the statement deceiving somebody. Taking the quoted definition as applied to a material statement in the official return made by a sheriff, and looking at the return as here made in the face of the facts, if it is not clear that he stated a material fact contrary to the truth, then no amount of discussion could make it clearer. The statement in the return was contrary to the truth of facts actually known by the officer, and obviously so; whence it becomes equally obvious that the effect of the statute can be avoided only by construing it away even to the point of sterilization, leaving the statute as of no worthwhile effect whatever.

The controlling opinion says, however, that the execution creditor may have relief under Section 4241, Code 1942, which prescribes a remedy for a failure to make a levy. When a plaintiff has a particular remedy under a particular statute, he is not to be denied it because he may have some other remedy under some other statute—

.a manifest proposition against which no authority is cited or can be found.

**Roberds, J.,** concurs in this opinion.

DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

I concur fully in Judge GRIFFITH's dissenting opinion, and will only say in addition thereto that the controlling opinion herein materially amends the statute by judicial construction. This, I think, we are without the right to do and should leave that matter to the legislature.